UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LI MING YAN**,

　　**Plaintiff**,

v.　　　　　　　　　　　　　　　　　　Case No. 3:17cv928-TKW-HTC

**HUNAN GOURMET, INC.**, d/b/a
Hunan Express, and **MIN JIANG**,

　　**Defendants**.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case is before the Court on Defendants' motion for summary judgment (Doc. 32). Having reviewed the motion, Plaintiff's memorandum in opposition (Doc. 42), Defendants' reply memorandum (Doc. 45), Defendants' notice of supplemental authority (Doc. 53), and the exhibits attached to these filings (Docs. 32-1 to 32-4, 42-1 to 42-4, 45-1 to 45-3, and 53-1), the Court finds that the motion is due to be granted for the reasons that follow.

### Undisputed Facts

Defendant Hunan Gourmet, Inc. is a local Chinese food restaurant in Fort Walton Beach, Florida. Defendant Min Jiang is the owner, officer, and director of the restaurant and was the owner of the restaurant during 2015 and 2016. As the

owner, she supervises the restaurant's employees. Defendants do not provide catering or delivery services or engage in online sales or mail delivery.

Before December 24, 2015, Defendant Jiang owned and operated the restaurant at the Fort Walton Beach location as Hunan Express, Inc. On December 24, 2015, she filed articles of incorporation with the Florida Department of State and established Defendant Hunan Gourmet, Inc., which still does business as Hunan Express.

Plaintiff worked as a cook for Defendants for two periods of time: April 5 to December 24, 2015 and May 29 to August 29, 2016. His sole job duties were preparing and cooking food.

In 2015 and 2016, Defendants' cooks did not use the telephone, internet, or mail or travel across state lines as part of their duties. Also, Plaintiff did not order or buy food or supplies, operate the cash register, or process customers' credit card transactions for Defendants.

Plaintiff initially filed the complaint in this case as a class action containing four counts. *See* Doc. 1. However, after the Court dismissed the last three counts, *see* Doc. 10, Plaintiff chose to proceed with an individual action instead and filed the amended complaint (Doc. 13) that is now the operative pleading. The amended

complaint contains a single count for uncompensated overtime in violation of the FLSA.[1]  Doc. 13, at 5-6 (¶¶22-23).

## Summary Judgment Standard

Summary judgment is appropriate when, after viewing the record and the reasonable inferences drawn from it in the light most favorable to the non-moving party, the Court determines that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party "bears the initial burden of demonstrating the absence of a genuine dispute of material fact."  *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018) (citations omitted).  Once the moving party has met its burden, the non-moving party must put forward specific facts showing a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party must show more than "some metaphysical doubt."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party, there is no genuine issue for trial."  *Id.* at 587 (internal quotation marks omitted).

---

[1] Fair Labor Standards Act, 29 U.S.C. 201 *et seq.*

## Analysis

Defendants move for summary judgment on the grounds of lack of FLSA coverage. Doc. 32, at 1. They argue that neither enterprise coverage nor individual coverage applies to Plaintiff's alleged employment with them. *Id.* Plaintiff does not mention individual coverage in his response, *see* Doc. 42, so he waives any argument that individual coverage applies, *see Schwarz v. Bd. or Supervisors*, 672 F. App'x 981, 983 (11th Cir. 2017). However, based on the undisputed circumstances of Plaintiff's alleged employment with Defendants, it is highly unlikely that individual coverage applies in any event. *See Thorne v. All Rest. Servs.*, 448 F.3d 1264, 1266-69 (11th Cir. 2006) (holding that individual coverage applies when an employee "work[s] for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees[;] . . . regularly us[es] the instrumentalities of interstate commerce in his [or her] work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel[;] . . . [or] performs work directly essential to producers of commerce" as opposed to "provid[ing] local services").

Without individual coverage, the only remaining avenue for FLSA coverage is enterprise coverage. *Id.* at 1265-66. Enterprise coverage has two elements:

> An enterprise . . . is subject to the FLSA's overtime wage provision, so long as it (1) has at least two employees engaged in interstate commerce or the production of goods for interstate commerce, or who handle, sell, or otherwise work on goods or materials that had once moved [in] or been produced for . . . interstate commerce, and (2) has gross sales of at least $500,000 in sales annually.

4

*Josendis v. Wall to Wall Residence Repairs Inc.*, 662 F.3d 1292, 1317 (11th Cir. 2011); *see also Collar v. Abalux, Inc.*, 895 F.3d 1278, 1281 (11th Cir. 2018).

Plaintiff argues that the first element is met because it is reasonable to infer from Plaintiff's declarations (Doc. 42-1), Defendant Jiang's affidavit (Doc. 32-1), and the undisputed facts that Defendants have at least two employees who handle goods that once moved in interstate commerce, for example sauce from China. Doc. 42, at 9-10. Defendants do not argue this point in their motion or reply, *see* Docs. 32, 45, and the Court agrees with Plaintiff that the first element is met. Accordingly, the dispute between the parties revolves around the second element.

Defendants state that they "had a gross volume of sales of $227,813.00 in 2015 and $238,924.00 in 2016," Doc. 32, at 3 (¶6)—amounts well under the $500,000 minimum for enterprise coverage. Defendants attach as exhibits to support this statement, not only Defendant Jiang's affidavit (Doc. 32-1) but also gross sales receipts (Doc. 32-3) and Form DR-15 filings with the Florida Department of Revenue (Doc. 32-4). Plaintiff challenges these figures by pointing to seeming inconsistencies in Defendants' financial records, *see* Doc. 42, at 10-14, but Defendants persuasively explain that these seeming inconsistencies are the result of Plaintiff's misunderstandings (for example, of the restaurant's change in corporate status on December 24, 2015), *see* Doc. 45, at 3-9.

Plaintiff comes up with his own estimate as to Defendants' annual gross sales at the time of his employment, which he expresses as a range from $487,100[2] to $715,100.  Doc. 42, at 14.  However, based on Defendants' documentary evidence, Plaintiff's self-serving guesswork fails to create a genuine issue for trial, even when the record is viewed in the light most favorable to him.

The only support Plaintiff supplies for his guess is his personal observations of the restaurant's activities while he worked there.  *Id.* (citing Doc. 42-1).  These observations do not cover Defendants' annual sales for the years 2015 and 2016 for the simple reason that Plaintiff allegedly worked for Defendants for only 9 months in 2015 and 3 months in 2016.  *Id.* at 2 (¶3).  Thus, at best, the observations provide a snapshot of the annual sales.  *See Hajiani v. Perseus Invs., LLC*, 2012 U.S. Dist. LEXIS 110136, at *8-9 (N.D. Ga. Aug. 6, 2012) ("[The plaintiff]'s testimony is merely a snapshot of the [d]efendant's yearly revenue.  At best, the [p]laintiff can only testify as to the [d]efendant's revenue on the days he worked[.]").

Moreover, because Plaintiff's job was to prepare and cook food (not place orders, make purchases, act as a cashier, or process credit card transactions), he lacked the opportunity during his employment to familiarize himself with the financial side of Defendants' business.  Thus, Plaintiff's estimate of Defendants' sales is pure speculation.  *See Shi v. Yum's Chinese Restaurant*, Case No. 17-cv-

---

[2] This estimate is still under the statutory minimum.

6

2900-MSN-cgc, at 7 (W.D. Tenn. Apr. 26, 2019)[3] ("Plaintiffs' estimates regarding Defendants' gross sales are pure speculation. Plaintiffs were employed solely as cooks for Defendant Lin's restaurant. Plaintiffs never worked as cashiers, and there are no facts in either Plaintiff's affidavit to support that he had knowledge of amounts paid by customers."); *Hernandez v. Nanju Corp.*, 2008 U.S. Dist. LEXIS 35481, at *6-7 (S.D. Fla. Apr. 30, 2008) ("While [p]laintiff may know the average amount of food he prepared each day, the record does not indicate he had any knowledge or experience with the financial practices of the business. Plaintiff has failed to produce anything more than his own speculative beliefs in attempting to contradict [d]efendants' affidavit and tax returns.").

Lastly, Plaintiff's estimates depend on his assumption that, in 2015 and 2016, "[e]ach dish was charged at $10.00 on average," Doc. 42-1, at 4 (¶8), but he provides no factual basis for that assumption and undisputed evidence submitted by Defendants refute the assumption. Specifically, Defendants submitted evidence showing that the restaurant's 29 lunch and dinner combo options now cost $5.30 for lunch and $7.55 for dinner (Doc. 45-3, at 2), all but 5 of the 97 other meal options now cost less than $10.00 (*id.* at 1-2), the 8 side order prices now range from $0.50 to $4.75 (*id.* at 1), "[t]he restaurant has had the same menu offerings since 2015"

---

[3] Defendants submitted this case as supplemental authority, not only because it supports their legal argument but also because Plaintiff was also a plaintiff in that case. *See* Doc. 53.

(Doc. 45-2, at 1 (¶3)), and "the restaurant raised its prices per plate slightly" 2 or 3 years before February 2019 (*id.*)—*i.e.*, after Plaintiff's first period of alleged employment with Defendants and possibly after his second period, as well.

For the reasons stated above, Plaintiff's estimation of Defendants' gross sales for 2015 and 2016 is pure speculation that does not rebut Defendants' figures or create a genuine issue of material fact. Accordingly, the second element of enterprise coverage is not met, and because Plaintiff cannot establish FLSA coverage, Defendants' motion for summary judgment is due to be granted.

**Attorney's Fees and Costs**

At the end of their motion for summary judgment, "Defendant[s] respectfully request[] . . . an award of [their] costs and reasonable attorney[']s fees pursuant to 28 U.S.C. §§1914, 1919, 1920, and 1927." Doc. 32, at 10. Defendants' argument in support of the request hinges on the lack of FLSA coverage in this case. *Id.*

The Court finds no basis for an award of attorney's fees under §1919 (lack of jurisdiction) or §1927 (vexatious multiplication of proceedings). With respect to §1919, Defendants admit in their answer that jurisdiction and venue are proper. Doc. 16, at 1 (¶3), 2 (¶4). With respect to §1927, the Court has considered the requirements mentioned in *Goode v. Wild Wing Cafe*, 588 F. App'x 870, 874 (11th Cir. 2014), and finds no support for Defendants' request. *Accord* Docs. 52, 55 (denying Defendants' motion for attorney's fees under §1927 and Fed. R. Civ. P.

11). Accordingly, the request for attorney's fees is due to be denied. However, costs under §§1914 and 1920 will be taxed in accordance with N.D. Fla. Loc. R. 54.2.

## Conclusion

Accordingly, for the reasons stated above, it is **ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 32) is **GRANTED**.

2. Defendants' request for attorney's fees is **DENIED**, but the request for costs is **GRANTED** subject to Defendants' compliance with the requirements of N.D. Fla. Loc. R. 54.2.

3. The Clerk is directed to enter judgment in favor of Defendants stating: "Li Ming Yan's claims against Hunan Gourmet, Inc., and Min Jiang are dismissed with prejudice."

**DONE and ORDERED** this 22nd day of November, 2019.

*T. Kent Wetherell, II*
   **T. KENT WETHERELL, II**
   **UNITED STATES DISTRICT JUDGE**